**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR POLICY ANALYSIS ON
TRADE AND HEALTH (CPATH);
CALIFORNIA PUBLIC HEALTH
ASSOCIATION - NORTH; CHINESE
PROGRESSIVE ASSOCIATION;
PHYSICIANS FOR SOCIAL
RESPONSIBILITY,
            *Plaintiffs-Appellants,*

            and

AMERICAN NURSES ASSOCIATION,
                    *Plaintiff,*

            v.

OFFICE OF THE UNITED STATES
TRADE REPRESENTATIVE; UNITED
STATES DEPARTMENT OF COMMERCE,
            *Defendants-Appellees.*

No. 06-16682

D.C. No.
CV-05-05177-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
May 16, 2008—San Francisco, California

Filed August 22, 2008

Before: Procter Hug, Jr. and N. Randy Smith, Circuit Judges,
and Richard Mills,* District Judge.

*The Honorable Richard Mills, Senior United States District Judge for
the Central District of Illinois, sitting by designation.

11455

Opinion by Judge N. Randy Smith

## COUNSEL

Martin Wagner (argued) and Sarah Burt, Earthjustice, Oakland, California, counsel for the plaintiffs-appellants.

Mark B. Stern (argued) and Alisa B. Klein, United States Department of Justice, Civil Division, Washington, D.C., counsel for the defendants-appellees.

## OPINION

N. RANDY SMITH, Circuit Judge:

The "fairly balanced" membership requirement, imposed by the Federal Advisory Committee Act ("FACA") and applied to the Trade Act of 1974 ("Trade Act"), is not reviewable because those statutes provide us with no meaningful standards to apply. The district court therefore properly dismissed the complaint by the Center for Policy Analysis on Trade and Health, California Public Health Association - North, Chinese Progressive Association, and Physicians for Social Responsibility (collectively, "CPATH"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

## A.

The Trade Act, 19 U.S.C. § 2155, *et seq.*, directs the United States Trade Representative and the United States Department of Commerce (collectively, "USTR") to obtain policy advice and information regarding trade issues from a series of advisory committees known as Industry Trade Advisory Committees or "ITACs." *See* 19 U.S.C. § 2155(c). ITACs provide United States trade negotiators with policy advice on (1) "negotiating objectives and bargaining positions before entering into a trade agreement," (2) "the operation of any trade agreement once entered into," and (3) "other matters arising in connection with the development, implementation, and administration of the trade policy of the United States." *See* 19 U.S.C. § 2155(a)(1)(A)-(C), (d).[1]

The Trade Act requires that the ITACs "shall, insofar as is practicable, be representative of all industry, labor, agricultural, or service interests (including small business interests) in the sector or functional areas concerned." 19 U.S.C. § 2155(c)(2). As expressed in the legislative history, Congress's stated purpose for this portion of the Trade Act is:

> to establish the institutional framework to assure that representative elements from the private sector have the opportunity to make known their views to U.S. negotiators, and to provide the latter a formal mechanism through which to seek information and advice from the private sector, with respect to U.S. negotiating objectives and bargaining positions before and during the multilateral trade negotiations.

---

[1]The ITACs at-issue in this litigation are ITAC-4 (Consumer Goods), ITAC-5 (Distribution Services), ITAC-8 (Information and Communications Technologies, Services, and Electronic Commerce), ITAC-10 (Services and Finance Industries), ITAC-14 (Customs Matters and Trade Facilitation), and ITAC-16 (Standards and Technical Trade Barriers).

S. Rep. No. 93-1298 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7248. According to relevant legislative history, the ITACs were to be "representative of the producing sectors of our economy." *Id.* at 7249.

The Trade Act also provides for the formation of two other categories of advisory committees. One such committee must be composed of "not more than 45 individuals and shall include representatives of non-Federal governments, labor, industry, agriculture, small business, service industries, retailers, non-governmental environmental and conservation organizations, and consumer interests." 19 U.S.C. § 2155(b)(1). According to the Trade Act, this committee must be "broadly representative of the key sectors and groups of the economy, particularly with respect to those sectors and groups which are affected by trade." *Id.* The Trade Act also provides for the creation of "individual general policy advisory committees for industry, labor, agriculture, services, investment, defense, and other interests, as appropriate, to provide general policy advice[.]" *Id.* § 2155(c)(1). Committees in this category must, "insofar as is practicable, be representative of all industry, labor, agricultural, service, investment, defense, and other interests, respectively, including small business interests[.]" *Id.* Neither the § 2155(b)(1) committee nor the (c)(1) committees are at issue in this litigation; CPATH is instead concerned about the ITACs formed pursuant to 19 U.S.C. § 2155(c)(2).

**B.**

FACA requires (among other things) that "the membership of the [ITACs] . . . be *fairly balanced* in terms of the points of view represented and the functions to be performed[.]" 5 U.S.C. App. 2 § 5(b)(2) (emphasis added). FACA does not define what constitutes a "fairly balanced" committee — in terms of points of view represented or functionality — or how that balance is to be determined. FACA makes clear that "[t]o the extent they are applicable, the guidelines set out in subsection (b) of this section *shall be followed* by the President,

agency heads, or other Federal officials in creating an advisory committee." 5 U.S.C. App. 2 § 5(c) (emphasis added).

## C.

CPATH contends that the ITACs do not currently have any members representing the public health community and that, as a result, the points of view represented on the ITACs are not fairly balanced. Because of the perceived lack of balance, CPATH requested that the USTR appoint a representative from the public health community to each of the ITACs. The USTR never responded to CPATH's requests and has not allowed CPATH access to the ITACs or to any of the confidential trade information known by the ITACs' members. CPATH subsequently brought this action against the USTR to remedy the alleged violations of FACA arising out of what it viewed as imbalance in the points of view represented by the ITACs' membership.

USTR moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). USTR argued that dismissal was required because CPATH lacked standing and, additionally, that CPATH's complaint was non-justiciable under the Administrative Procedure Act ("APA"). The district court found that CPATH had standing but nevertheless dismissed the action, holding that FACA's "fairly balanced" requirement was non-justiciable under the APA.[2]

## II.

We review de novo the district court's dismissal for lack of jurisdiction and may affirm on any basis supported by the record. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979 (9th Cir. 2007).

---

[2]We do not disagree with the district court's conclusion that CPATH has standing. We need not discuss that issue any further here in light of our holding that the balance of the ITACs is not reviewable under the APA.

### III.

### A.

**[1]** "Congress intends the executive to obey its statutory commands and, accordingly, . . . it expects the courts to grant relief when an executive agency violates such a command." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986). The APA generally provides a remedy for any such violation. *See* 5 U.S.C. § 701, *et seq.* (outlining requirements). "[T]he Court has noted that the APA . . . embodies a 'basic presumption of judicial review.' " *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)).

**[2]** Exceptions to reviewability under the APA exist only "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). "The legislative history of the Administrative Procedure Act indicates that [the doctrine of non-reviewability] is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citations and internal quotation marks omitted). "[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.*

### B.

**[3]** As noted, the first prong of the APA's reviewability analysis inquires whether the statute expressly precludes judicial review. 5 U.S.C. § 701(a)(1). This prong is inapplicable because neither the Trade Act nor FACA expressly precludes judicial review. *See* 5 U.S.C. § 701(a)(1). Additionally, with certain exceptions that do not apply here, the Trade Act

expressly states that FACA applies to the ITACs. *See* 19 U.S.C. § 2155(f).

## C.

**[4]** The second prong of the APA's reviewability analysis precludes review if "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We have interpreted 5 U.S.C. § 701(a)(2) as applicable in two circumstances. *Newman*, 223 F.3d at 943. "The first of these circumstances is that in which a court would have no meaningful standard against which to judge the agency's exercise of discretion and there thus is no law to apply." *Id.* (internal quotation marks and citations omitted). "The second such circumstance is that in which the agency's action requires a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise, including the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with the agency's overall policies." *Id.* (internal quotation marks and citations omitted) (brackets in original). In such cases, the decisionmaking process is absolutely "committed" to the agency's judgment. *Heckler*, 470 U.S. at 830. We have also emphasized that § 701(a)(2) "stakes out a very narrow exception." *Newman*, 223 F.3d at 943 (internal quotation marks and citation omitted). We must then determine whether FACA's "fairly balanced" requirement, as applied to the Trade Act, precludes judicial review because the agency action fits either of the two circumstances described above and is therefore committed to agency discretion by law.

## D.

Review of the Trade Act and FACA make clear that those statutes provide us with no meaningful standards to apply when considering whether USTR complied with the "fairly balanced" requirement imposed by FACA. This is, as Judge Silberman noted in *Public Citizen v. National Advisory Com-*

*mittee on Microbiological Criteria for Foods*, 886 F.2d 419 (D.C. Cir. 1989), a political question that is best left to the other branches of government. *See id.* at 426-430 (Silberman, J., concurring in the judgment) (stating that "[t]he relevant points of view on issues to be considered by an advisory committee are virtually infinite and, therefore, the judgment as to what constitutes an appropriate or 'fair' balance of those views must be a political one").

**[5]** The statutes at issue in this case — FACA and the Trade Act — are devoid of standards suggesting what Congress intended when it required all advisory committees to be "fairly balanced." As a result, determination whether a given ITAC is in compliance with the Trade Act's requirements is "hopelessly manipulable" and poses, as Judge Silberman noted, "a major political question of our time." *Id.* at 427, 429. Given that context, analysis of whether the ITACs satisfy the "fairly balanced" requirement — both in terms of function and points of view represented — is a task "not properly undertaken by life-tenured, unelected federal judges." *Id.* at 427-28. Instead, we believe that this determination is a process best left to the executive and legislative branches of government.

**[6]** The language of the Trade Act and FACA compel this result. FACA does not, for example, articulate what perspectives must be considered when determining if the advisory committee is fairly balanced. *See* 5 U.S.C. App. 2 § 5(b)(2). While the Trade Act states that the ITACs "shall, insofar as is practicable, be representative of all industry, labor, agricultural, or service interests (including small business interests) in the sector or functional areas concerned[,]" 19 U.S.C. § 2155(c)(2), that section provides no standards to allow us to determine when it is, or when it is not, practicable to appoint a certain interest onto one of the ITACs. Finally, the suggestion in the Trade Act's legislative history that the ITACs should be "representative of the producing sectors of our economy[,]" S. Rep. No. 93-1298 (1974), *reprinted in* 1974

U.S.C.C.A.N. at 7249, provides no guidance. We are in no position to determine whether the present composition of the ITACs are "representative" and therefore in compliance with the Trade Act. We have no reasoned basis from which to conclude whether adding a public health representative to any one of the ITACs would achieve the proper balance, or whether it would be practicable to do so. It is not a " 'difficult question' " that courts must answer, as CPATH argues in its brief on appeal. *See* Appellant's Op. Brief at 15 (quoting *Microbiological Criteria*, 886 F.2d at 434 (Edwards, J., concurring in part and dissenting in part)). Instead, it is a political question arising out of a statute that provides us with no meaningful standards to apply. This is a question that we are ill-suited to decide.

CPATH argues that our holding here is in direct conflict with decisions from our sister circuits. Not so. In fact, none of our sister circuits have specifically addressed whether the Trade Act supplies sufficiently definite standards to allow for judicial review of FACA's "fairly balanced" requirement. Other courts have addressed the "fairly balanced" requirement in the context of other laws and have found the 'fairly balanced' requirement specific enough to allow for judicial review. *See Nat'l Anti-Hunger Coal. v. Exec. Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071 (D.C. Cir. 1983) (upholding the district court's application of FACA to Executive Order No. 12369, 47 Fed. Reg. 28899 (June 30, 1982)); *Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999) (applying FACA to National Institute for Occupational Safety and Health); *Colo. Envtl Coal. v. Wenker*, 353 F.3d 1221 (10th Cir. 2004) (considering fairly balanced requirement in context of resource advisory councils mandated by Bureau of Land Management regulations). But those decisions do not lessen our obligation to determine whether these particular statutes contain sufficiently definite standards for us to apply to allow for judicial review. As noted, we conclude that they do not.

CPATH heavily relies on *National Anti-Hunger Coalition* as support for the argument that FACA's "fairly balanced" requirement is reviewable. CPATH argues that, because the D.C. Circuit did not expressly decide the case on the particulars of the statutes before the court, those factors must not be controlling or even important. We disagree. The *National Anti-Hunger Coalition* court affirmed the district court's holding that the at-issue committee complied with FACA's "fairly balanced" requirement. 711 F.2d at 1074. The district court, however, studied the Executive Order establishing the committee and concluded that "[t]he President's express intent in establishing the survey was to apply to federal programs the expertise of leaders in the private sector with 'special abilities to give detailed advice on cost-effective management of large organizations.' " *Nat'l Anti-Hunger Coal. v. Exec. Comm.*, 557 F. Supp. 524, 528 (D.D.C. 1983) (internal citation omitted). The district court concluded that in light of that objective, the plaintiffs failed to identify any actionable imbalance. *Id.* As noted, the D.C. Circuit affirmed the district court's conclusion in this regard as "unimpeachable." *See Nat'l Anti-Hunger Coal.*, 711 F.2d at 1074. We decline to follow *National Anti-Hunger Coalition*, because it fails to answer the question whether FACA's "fairly balanced" requirement, as applied to the Trade Act, presents a situation where there is no law to apply. *See Newman*, 223 F.3d at 943.

CPATH also relies on the Fifth Circuit's decision in *Cargill*, as support for its argument that the "fairly balanced" requirement is reviewable. *See Cargill*, 173 F.3d at 334-38 (holding that both the functional and point-of-view balance requirements imposed by FACA were justiciable in light of the "weight of the caselaw" favoring judicial review and citing *Microbiological Criteria*, 886 F.2d at 434 (Edwards, J., concurring in part and dissenting in part) and 423-25 (Friedman, J., concurring); *Nat'l Anti-Hunger Coal.*, 711 F.2d at 1074 n.2).

We decline CPATH's invitation to follow *Cargill* because, like *National Anti-Hunger Coalition*, the *Cargill* decision

arose in a different statutory context, with different requirements for the committees than those presented by this case. *See Cargill*, 173 F.3d at 327-28 (considering whether National Institute for Occupational Safety and Health violated FACA's fairly balanced requirement). Further, the *Cargill* decision offers little explanation *why* FACA's fairly balanced requirement is justiciable. Given the statutory framework before us, we are compelled to hold that this is a case where there is no law to apply. *See Heckler*, 470 U.S. at 830.

CPATH also relies on *Wenker*, where the Tenth Circuit held that FACA's "fairly balanced" requirement is reviewable. 353 F.3d at 1233. However, the *Wenker* court noted that the regulations at issue in that case provided express guidance as to the composition of the committees. *Id.* at 1233-34 (considering FACA's "fairly balanced" requirement in light of 43 C.F.R. § 1784.2-1 and § 1784.6-1 and holding that such a requirement was justiciable). As set forth above, no such regulations exist in this case. We therefore find *Wenker* persuasive only to the extent that it suggests that additional regulations might, in some circumstances, be sufficient to result in a reviewable controversy under the APA.

**[7]** We therefore conclude that neither FACA nor the Trade Act provide us with meaningful standards to apply when determining whether the "fairly balanced" requirement has been violated. In light of the complexities involved with United States trade policies, this is an area best suited to executive or legislative determination. The USTR is better equipped — given this statutory framework — than the courts to succeed in the task of determining the proper balance of the ITACs. Allowing the USTR to determine the proper balance for the ITACs' membership will offer the best opportunity for the ITACs to fulfill their statutory mandate under the Trade Act.

**[8]** Thus, under the plain language of FACA and the Trade Act, CPATH's complaint is non-reviewable, and the district

court correctly dismissed CPATH's complaint on that basis. Our holding here is, however, narrow. Although we hold that CPATH's challenge to the ITACs is non-reviewable, we do not suggest that FACA's "fairly balanced" requirement is non-reviewable in every circumstance. It remains an open question in this circuit whether FACA's "fairly balanced" requirement presents a reviewable controversy in other circumstances.

**AFFIRMED.**