### THE UNITED STATES v. THOMAS S. REYBURN.

Indictment against the defendant, charging him with having *issued* a commission in the United States for a vessel, to the intent that the vessel might be employed in the service of a foreign people to cruise and commit hostilities against the emperor of Brazil, with whom the United States were at peace, against the act of congress, &c. The second count charged the defendant with having delivered a commission to John Chase for the like purpose and intent. The fourth count charged him with having *issued a commission* to Chase for the like purpose. Evidence was given to prove that the vessel was built and fitted out for Chase in Baltimore, that she changed her name, hoisted the Buenos Ayrean flag at St Eustatia, and made a cruise under the command of Chase, capturing vessels belonging to the subjects and government of Brazil. Also, that Chase had been indicted for *accepting* in the district of Maryland a commission to cruise, and cruising with the said privateer against the subjects and government of Brazil; and that a bench warrant had been repeatedly issued for him, but that he could not be found. The counsel for the United States asked a competent witness, whether he saw a commission on board the privateer? Held that such evidence was admissible.

The evidence falls within the rule that where the non production of the written instrument is satisfactorily accounted for, satisfactory evidence of its existence and contents may be shown. This is a general rule of evidence applicable to criminal as well as to civil suits: and a contrary rule not only might, but probably would render the law entirely nugatory; for the offender would only have to destroy the commission, and his escape from punishment would be certain.

The rule as to the admission of secondary evidence does not require the strongest possible evidence of the matter in dispute; but only that no evidence shall be given, which, from the nature of the transaction, supposes there is better evidence of the fact attainable by the party. It is said in the books, that the ground of the rule is a suspicion of fraud; and if there is better evidence of the fact which is withheld, a presumption arises that the party has some secret or sinister motive in not producing it. Rules of evidence are adopted for practical purposes in the administration of justice; and must be so applied as to promote the ends for which they are designed.

THIS case came before the court, on a division of opinion by the judges of the circuit court for the district of Maryland.

Thomas S. Reyburn, the defendant, was indicted under the provisions of the third section of the act of congress, passed April 20, 1818, entitled "an act in addition to the act for the punishment of certain crimes against the United States, and to repeal the acts therein mentioned."

The indictment contained four counts; the questions on which the judges of the circuit court were divided, were presented under the first and second.

The first count charged, that Thomas S. Reyburn, the defendant, on the 1st day of July 1828, at the district of Maryland, within the territory and jurisdiction of the United States, with force and arms did issue a commission for a certain vessel called the Jane, otherwise called the Congresso, to the intent that such vessel might be employed in the service of a foreign people, that is to say, in the service of the United Provinces of Rio de la Plata, to cruise and commit hostilities against the subjects and property of a foreign prince, that is to, say, his imperial majesty, the constitutional emperor and perpetual defender of Brazil, with whom the United States then were and still are at peace, against the form of the act of congress in such case made and provided, and against the peace, government and dignity of the United States.

The second count was as follows:

And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Thomas G. Reyburn, on the day and year aforesaid, at the district aforesaid, within the territory and jurisdiction of the United States, and within the jurisdiction of this court, did with force and arms deliver a commission for a certain other vessel, called the Jane, otherwise called the Congresso, to the intent that such vessel might be employed in the service of a foreign people, that is to say, the service of the United Provinces of Rio de la Plata, to cruise and commit hostilities against the subjects and property of a foreign prince, that is to say, against the subjects and property of his imperial majesty, the constitutional emperor and perpetual defender of Brazil, with whom the United States then were and still are at peace, against the form of the act of congress in such case made and provided, and against the peace, government and dignity of the United States.

On the trial of the cause, the United States offered in evidence, that the privateer referred to in the indictment was built and fitted out in the port of Baltimore in the district of Maryland, for a certain John Chase, also therein mentioned: that the Jane was commanded from the port of Baltimore to St Barts, thence to St Eustatia in the West Indies, and the crew was shipped in said port of Baltimore, at the request of Franklin Chase, a brother of said John Chase, the said Franklin Chase being the only person known to the shipper of the crew;

that she sailed from the said port to the West Indies, under the name of the Jane, that at St Eustatia the said vessel hoisted Buenos Ayrean colours, changed her name to that of the Congresso, and performed a cruise, under the command of the said John Chase, exercising therein acts of hostility against the subjects and government of Brazil.

The United States further gave in evidence, from the records of this court, that the aforesaid John Chase stood indicted for a misdemeanour for accepting in the district of Maryland a commission to cruise, and for cruising with the said privateer against the government and subjects of the empire of Brazil; that a bench warrant had been repeatedly issued out against said Chase, but that he could not be found, and the process was always returned *non est inventus.*

Whereupon the counsel for the United States proceeded to inquire of a legal and competent witness, whether he saw a commission on board the said privateer? But the traverser, by his counsel, objected to the admissibility of any evidence relative to the character or the contents of the said commission, because the commission was not produced by the United States or obtained from any witness, nor a copy procured from the public archives of Buenos Ayres, nor its destruction proved, nor any efforts to procure it shown by the United States.

And the judges of the aforesaid court, being opposed in opinion upon the admissibility of the said evidence, do at the request of the attorney of the United States for the district of Maryland, state and certify their said opposition in opinion to the supreme court of the United States, according to the act of congress in such case made and provided.

The case was argued for the United States by Mr Williams, district attorney of the United States for the Maryland district, and Mr Taney, attorney-general, for the United States; and a written argument, on behalf of the defendant, was submitted to the court by Mr M'Mahon, and Mr Glenn.

For the United States it was argued, that the material facts in the case were, that the commission, of the contents of which the United States proposed to give evidence without producing it, was seen on board of the privateer in the service of Buenos Ayres, commanded by captain John Chase.

[United States v. Reyburn.]

No exertions of the United States, and no process of the court could compel its production. And Chase himself, who was in possession of it, if within the reach of the process of the court, would not be bound to produce it; because it would tend to criminate himself, and convict him on an indictment then pending against him. It is a case, then, in which no exertions of the party, and no process from the court would enable them to produce the commission itself. It was absolutely out of their power to obtain it.

The rule of evidence is, that in a case of this sort, the written evidence must itself be produced, if it is in the power of the party, by any reasonable exertions on his part to procure it. But if he is not in fault and no reasonable exertions on his part will enable him to obtain the writing itself, he may then offer parol evidence of its contents. Indeed the rule may justly be stated, still more generally. And where the highest and best evidence the nature of the case admits of, is out of the reach of the party, without his fault, he may resort to *secondary* evidence.

Where a subscribing witness to an instrument is dead, or out of the reach of the process of the court, his hand writing may be proved. 1 Stark. Ev. 338. 'And where a witness becomes incapacitated, so as to put it out of the power of the party to obtain the testimony. 2 Esp. Rep. 697. The witness had maried the plaintiff.

It may be said, that these cases merely apply to instrumental witnesses.

The principle is the same. It is, that secondary evidence is received, because it is not in the power of the party to offer the best. The best evidence would be the witness himself: but as that testimony could not be procured, the secondary evidence, proof of his hand-writing, is received.

The same rule applies to the instrument itself. The *writing* is the best evidence; but if it is not in the power of the party to produce it, he may offer secondary evidence, that is parol evidence of its contents. Parol evidence may be given of instruments in the possession of the party. 1 Stark. Ev. 361; Arch. Plead. Evid. 72; 13 Johns. Rep. 90; 1 Phil. Ev. 39; 1 Leach's C. C. 330; 17 Johns. Rep. 330. It is not the notice that makes the evidence admissible. The notice is

required to prevent fraud and surprise. The secondary evidence is admitted, because it is out of the power of the party to procure it. He cannot by any exertions compel the production of it.

This being the case with instruments in possession of the adversary, why will not the same rule apply to instruments in the possession of any other person; provided the party requiring them is equally incapable of procuring them? There is no distinction in principle, and the authorities show that there has been no distinction in practice. 9 Petersd. 159, note.

Whenever the instrument is out of the power of the party, secondary evidence may be produced. On an indictment for detaining a bill of exchange, under pretence of getting it discounted for the party; it was proved to be in the hands of another party who refused to produce it. Parol evidence was received of its contents. 9 Petersd. 162; 1 Leach's C. Law, 330 (272).

Commonwealth v. Snell, 3 Mass. Rep. 85. This was an indictment for passing a forged *note*, and a copy was received in evidence. The rule is there laid down, " that if an instrument cannot be produced, the prosecutor being in no fault, the next best evidence will be admissible."

A copy of an obligation made at Carraccas and certified by a notary, was received in evidence. Mauri v. Heffernan, 13 Johns. Rep. 58. In this case no doubt is expressed about the propriety of receiving secondary evidence. The only doubt was, whether the notarial copies should form a part of the secondary evidence. A written contract, deposited with a third person in the state of Ohio by the parties, may be proved by the depositary, without producing the original. A copy was proved by him under a commission. Bailey v. Johnson, 9 Cowen, 115.

The following case recognizes the authority of the cases before referred to; but seems to make it necessary that the third party should have the possession from or under the person against whom it is proposed to use it. Judge Tilghman's opinion supports substantially the principle contended for. The evidence was refused on the ground of *policy*. Judge Yeates's opinion appears to narrow the principle. Gray v. Pentland, 2 Serg. & Rawle, 31.

Notice in this case would have been an idle ceremony; the defendant could not produce it, and the evidence of the United States shows that they could not produce it. It would be absurd to notify him to do what it is admitted he could not accomplish. 13 Johns. Rep. 58. 3 Mass. Rep. 85. 9 Cowen, 115.

But in this case notice would not have been necessary even if the defendant had been in possession of the commission. 14 East, 274. 13 Johns. Rep. 93. 3 Mass. 85. 9 Petersd. 159, note. 9 Peterd. 162.

It is objected that no efforts were made to procure it. Exertions are required only where there is a reasonable prospect of success; not where it is previously known that they must be unavailing.

What means could the United States use to get this commission? What process would have brought captain Chase before the court? If he was before the court, would any court compel him to produce the commission. As all efforts would have been unavailing, the law will not require that which can accomplish nothing. It does not require that which must be but a vain effort, and can produce no result.

It is also objected that a copy might have been procured from the government of Buenos Ayres.

1. Had we a right to demand a copy? Were the government bound to give it to us? 2. Was there any reason to suppose that it would have been given as a matter of comity? Would they give it to assist a prosecution, in a foreign country, to punish one of their own commanders? 3. If they gave a copy of a commission to that vessel and that officer, how would that prove it to be a copy of the one seen by the witness? How would it prove that it was a copy of one issued in Baltimore? 4. There is no evidence that those commissions are recorded in any office in Buenos Ayres. 5. From the nature of the transaction charged in the indictment, they cannot be supposed to be recorded; for if they are issued in Baltimore, they must be sent to an agent in blank; for the name of the vessel and the captain could not be known to the government, and the government would hardly give a copy to prove itself guilty of such conduct. 6. But suppose a copy under seal to be produced, the seal would not prove itself; it must be proved by parol. United States v. Palmer, 3 Wheat. 695. See the

objection in that case in page 615.    The Estrella, 4 Wheat. 304.

If, therefore, a copy under seal could have been procured, the verity of it must have depended on parol evidence. It would be proved by parol, that the contents of the original were the same with the copy produced. If the witness proves the contents in any other way, is it not equally admissible? The copy certified, would not be a copy examined by a witness. The truth of it would depend on the certifying officer. And before an examined copy is required, there must be grounds for asserting that a copy is there; and there must be reasonable grounds for supposing that an examined copy would have been furnished for the purposes of this indictment.

It would seem that the commission of a privateer, or the character of a vessel, may be proved without producing the commission or a copy under seal.    3 Wheat. 615, 635.    And where the commission is proved to be lost, the court has admitted parol testimony of its character and contents, without insisting on endeavours to procure a copy.    The Estrella, 4 Wheat. 298, 303.

The counsel for the defendant contended, that the evidence offered in this cause, concerning which the judges of the court below differed in opinion, was inadmissible.    1. Because the evidence so offered was of a *secondary* character.    2. Because the facts proved did not present a proper case for the admission of *secondary* evidence.    3. Because the evidence offered was not the next best evidence, of which the nature of the case admitted.

1st point. The offence imputed to the traverser, as described in all the counts of this indictment, is defined by the act of congress of 20th April 1818: and to the establishment of the offence as there defined, it should appear that the traverser, with a view to the employment of the vessel in question, in the manner and for the purposes charged, had issued or delivered for such vessel, *a written warrant or authority for such employment, emanating in fact from the government of the United Provinces of Rio de la Plata.*    The word "commission," ex vi termini, imports a written authority from a competent source, given to any person as his warrant for the

[United States v. Reyburn.]

exercise of the powers which it delegates.   The act of " issu-
ing or delivering" the commission being the offence, the sta-
tute manifestly relates only to a written, or to what is the same
thing, a printed authority; and entirely excludes the notion
that a mere verbal authority is within its provisions.   The
nature and objects of the act of 1818, also clearly indicate,
that the commission, to be such, must emanate from a govern-
ment competent to give it; and must in fact authorise the em-
ployment of the vessel in the manner charged.   That act has
for its objects the preservation of our neutral relations, and the
strict enforcement of the obligations of all persons being within
the limits of our country to respect its neutral character: and
in the instance under consideration, to effect these objects it
prohibits belligerent nations or their agents, from commission-
ing any persons within our territory for the prosecution of their
warfare.   The delivery of a mere pseudo-commission, what-
ever it may be, is no violation of neutrality within the mean-
ing of this act; nor is the offence here charged established, as
has been contended, by the mere use of a paper purporting to
be a commission, in the manner and for the purposes charged.
This offence consists in, and is complete by the act of issuing
or delivering the commission for the purposes charged; without
reference to the use which may afterwards be made of it, and
even if it never be used.   It rests solely upon the nature and
efficacy of the commission alleged to have been issued or deli-
vered, and the intent in issuing or delivering it.   *The written
document, the commission itself, must therefore be produced,
that it may appear, or be proved to be what it is alleged
to be.*

The case at bar is also clearly within the general rule of the
criminal law.   " That written instruments, where they form
the gist, or a part of the gist of the offence charged, must be
set forth or recited in the indictment, and that if not so set
forth, the reason for such omission must appear upon the face
of the indictment."   Illustrations of this general rule will be
found in the cases of forgery, for which see 1 East's Rep. 180.
2 Leach's C. L. 657, 808.   2 East's C. Law, 975.   Common-
wealth v. Houghton, 8 Mass. Rep. 107: and cases of libels,
threatening letters and challenges.   Of indictments for not obey-
ing the orders or warrants of justices of the peace: 2 Chitty's

C. Law, Eng. ed. 263, 283. Of indictments for selling foreign
lottery tickets, in the cases of State of Maryland v. Scribner,
and Same v. Barker, 2 Gill and Johnson's Md. Rep. 252,
the rule, its reasons, and the exceptions to it, are perspicu-
ously stated. If, then, this case be one in which it is ne-
cessary that the indictment should have set forth the commiss-
ion, or have assigned some sufficient reason for the omission,
the commission itself is clearly the *primary* testimony, and
should have been produced at the trial, if that were practicable.

These remarks upon this point have been deemed necessary,
only because the contrary doctrine was strenuously contended
for in the court below.

2d point. The general rule as to the admission of secondary
evidence of the contents of a written instrument is, that such
evidence may be received where the written instrument has
been lost or destroyed, or there is proof to warrant the pre-
sumption of its loss or destruction; or where it is in the pos-
session of the defendant, and notice has been given to him to
produce it, or the action or indictment charges him with the
possession of it. The present case is without this rule. There
is no evidence of loss or destruction of the commission; and
the character of the instrument, as one highly important to the
persons exercising it, forbids the presumption, in the absence
of all proof, that it has been lost or destroyed. In this instance,
the secondary evidence is alleged to be admissible, because the
commission is supposed to have been traced to the possession
of a third person, not charged by this indictment, whose at-
tendance as a witness to produce the commission, or prove its
loss or destruction, cannot be procured. It may therefore be
questioned, whether it is not more properly a case of *defective
proof*, than one of *secondary evidence*. Jackson, ex dem.
Livingston, 16 Johns. Rep. 192.

But conceding the case to be analogous to those in which
secondary evidence has been admitted, in the absence of the
attesting witness, to prove the execution of a bond, &c. and to
which it has been assimilated, there should have been full
proof of diligent efforts on the part of the government to pro-
cure the attendance of the third person, to whose possession it
is said to have been traced. Such evidence is necessary to let
in the proof either of the *existence* or of the *contents* of the

[United States v. Reyburn.]

commission. The King v. The Inhabitants of Castleton, 6 Term Rep. 236. Williams and others v. Younghusband, 1 Starkie's Rep. 139. It should have been proved, either that the witness was without the jurisdiction of the court, as in the cases of Prince v. Blackburn, 2 East's Rep. 250, and Hodnett v. Toman, 1 Starkie's Rep.; or that diligent efforts had been made to find him, which had failed. Cunliffe v. Sefton, 2 East. 183. In this case no such proof was offered, nor was even a subpœna issued to procure the attendance of Chase. The government relies solely upon the pendency of an indictment against Chase, and the return of non est inventus to the process upon that indictment. The rule in question, however, requires the proof of due diligence to procure the attendance of the witness, *in the particular case;* and the want of it cannot be supplied by the proof, that such diligence, used in another case, has failed to procure his attendance. Had Chase been wanted as a witness in any cause in which no subpœna had been issued, nor any efforts made to procure his attendance, the fact that he had been summoned in other causes, and that his attendance could not be procured in those causes, would have furnished no ground for the continuance of the cause in which he had not been summoned. Diligence used in one cause, cannot be reflected upon another; so as to excuse negligence in the latter. Where proof of diligent efforts to procure a witness is necessary, it must, as well in cases where secondary evidence is to be let in, as in those where the trial is to be suspended because of his absence, apply to the particular case. A contrary doctrine might lead to the grossest abuses. In the present instance, the proof offered is used to raise a presumption, where the fact to be presumed, if it did exist, might have been fully established. Chase was a resident of Baltimore, and there fitted out the vessel in question. The court will not presume that he was without the jurisdiction of the court below, or that his attendance could not have been procured by diligent efforts, from the mere return of process in another case; when with due diligence in this case, the facts to be presumed, if they existed, might have been expressly established.

It is submitted, also, in connexion with this branch of the subject, that the evidence offered, goes only to the fact that a

commission was seen in the vessel. There is no proof that it was Chase's property, and none tracing it to his possession then or at any other period. Non constat, that it was then, has been since, or is now in his possession; and until this shall appear, there is no foundation for the introduction of this testimony, because of his alleged absence.

3d point. The evidence offered is not the proper secondary evidence, because it is not the next best evidence of the existence and contents of the commission, of which the nature of the case admits. The paper in question is a written act of state, emanating from a foreign and recognised government, and one of which the court will presume, in the absence of all proof to the contrary, there remains with the government issuing it, a *record* or *duplicate.* The rule as to the proper proof of *foreign written laws,* will here apply. Such laws must be proved by the production of an authenticated copy; or if that cannot be had, of a sworn copy. Hulle v. Heightman, 4 Esp. Rep. 75; Clegg v. Levy, 3 Camp. 166; Miller v. Heinrick, 4 Camp. 155; Consequa v. Willing and others, 1 Peters's C. C. Rep. 225; Robinson v. Clifford, 2 Wash. C. C. Rep. 2. And the courts will not presume that an authenticated copy, or a sworn copy cannot be had, until proof made, that due efforts were used to obtain it, which had failed: Seton v. The Delaware Insurance Company, 2 Wash. C. C. Rep. 176; and also Church v. Hubbard, 2 Cranch, 236 to 239. The same principle is applicable to the *acts of state* of a foreign government; note (*a*) to Buchanan v. Rucker, 1 Camp. 65. It is a general rule that when an original document is lost, the next best evidence of it is an authenticated or examined copy, which, if it exists, and can be found, must be produced: United States v. Britton, 2 Mason's C. C. R. 468. So where two or more parts of a deed have been executed, the loss or destruction of all the parts should be proved before secondary evidence of its contents can be received. Bull. N. P. 254; 6 T. R. 236. If, therefore, it was proved that there was a record or duplicate of the commission in the archives of the government of Buenos Ayres; before parol evidence could be offered of its contents, it would be necessary to prove that an authenticated or examined copy could not be had. In this case, the court will presume that there is such a record; it

being the usage of all governments to preserve some record of their public acts and commissions. The courts have presumed as to laws, from their nature and objects, that they were written, and that copies of them could be procured. Cases above cited from 2 Wash. C. C. Rep. 176.

The rules here stated, as to the introduction of secondary evidence, apply as well to criminal as to civil cases; nor is the necessity for producing Chase as the witness, in whose possession the commission is said to have been, or for using due efforts to procure his attendance, dispensed with by the suggestion, even if founded in fact, that the production of that commission might tend to criminate Chase himself. The privilege of refusing to answer on that ground; is one, personal to Chase himself, of which he may avail himself or not at his pleasure; and does not affect his competency as a witness, or establish the presumption, that the primary testimony could not be obtained by producing him as a witness.

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes up from the circuit court for the district of Maryland on a certificate of division of opinion, touching the admission of testimony offered on the part of the United States, in support of the prosecution.

The indictment against the prisoner contains several counts.

The first charges him with having, on the 1st day of July 1828, at the district of Maryland, within the territory and jurisdiction of the United States, *issued* a commission for a certain vessel called the Jane, otherwise the Congresso, to the intent that such vessel might be employed in the service of a foreign people; that is to say, in the service of the United Provinces of Rio de la Plata, to cruise and commit hostilities against the subjects and property of a foreign prince, that is to say, his imperial majesty the constitutional emperor and perpetual defender of Brazil, with whom the United States were at peace, against the form of the act of congress in such case made and provided.

The second count charges him with having *delivered* a commission for the Jane, with the like intent. The third charges him with having *delivered a commission to one John Chase* for the Jane, for the like purpose and with the like intent.

The fourth charges him with having *issued a commission* to John Chase for the Jane, for the like purpose and with the like intent. There are some other counts, laying the offence in different ways, which are unimportant for the present question.

In support of the prosecution, it was proved, that the privateer referred to in the indictment was built and fitted out in the port of Baltimore for a certain John Chase. That the Jane sailed from the port of Baltimore for the West Indies, and at St Eustatia she hoisted Buenos Ayrean colours, changed her name to that of the Congresso, and performed a cruise under the command of John Chase, exercising therein acts of hostility against the subjects and government of Brazil.

It was also given in evidence, on the part of the United States, that the said Chase stood indicted in that court for a misdemeanour for *accepting,* in the district of Maryland, a commission to cruise, and with cruising with the said privateer against the subjects and government of Brazil. That a bench warrant had been repeatedly issued out against the said Chase, but that he could not be found, and the process was always returned non est inventus. Whereupon the counsel for the United States proceeded to inquire of a competent witness, whether he saw a commission on board the said privateer. But the traverser, by his counsel, objected to the admissibility of any evidence relative to the character or contents of the said commission, because the commission was not produced by the United States, or obtained from any witness, nor a copy procured from the public archives of Buenos Ayres, nor its destruction proved, nor any efforts to procure it shown by the United States.

Upon the admissibility of the said evidence the judges were opposed in opinion, and the question comes here for decision.

The objections to the admissibility of the evidence have been submitted to the court under the following heads.

1. Because the evidence so offered was of a secondary character.

2. Because the facts proved did not present a proper case for the admission of secondary evidence.

3. Because the evidence offered was not the next best evidence of which the nature of the case admitted.

It is undoubtedly true that the evidence offered was of a secondary character. The primary evidence would have been the commission itself. The word commission, ex vi termini, imports a written authority; and the offence under this part of the act of congress (6 Vol. L. U. S. 321, sect. 3) consists in issuing or delivering a commission for any ship or vessel with intent that she may be employed, &c.; and there is no doubt it must be shown to have been a commission emanating from the government of the United Provinces of Rio de la Plata, as alleged in the indictment, and it must at least purport to be a valid, subsisting commission, and intended as the authority under which the vessel was to cruise. But all these inquiries relate to the sufficiency of the evidence to establish these facts, not to its competency. The former belongs to the jury to decide; the latter to the court. Whether it could have been shown that the commission about which the inquiry was made was a document coming within the indictment, and necessary to be proved in order to establish the offence, does not come within the question sent up to this court. The argum n. however, against the admissibility of the evidence, goes the length of contending that nothing short of the commission itself will furnish the necessary evidence.

We think the objection in this respect not well founded; but that the case falls within the rule, that when the non production of the written instrument is satisfactorily accounted for, secondary evidence of its existence and contents may be shown. This is a general rule of evidence applicable to criminal as well as civil suits. And there can be no reason why it should not apply to cases like the present. And, indeed, a contrary rule not only might, but probably would, render the law entirely nugatory, for the offender would only have to destroy the commission, and his escape from punishment would be certain.

Under this head of the objection, it has been argued, that the commission should have been set out or recited in the indictment, or the reason for the omission should appear on the face of the indictment. If there is any ground whatever for this objection (which we are far from intimating), the point cannot be made here under the question sent up from the circuit court. If well founded, it must be presented in some

[United States v. Reyburn.]

other form.   We are now confined to the question on which the opinions of the judges were opposed, and the sufficiency of the indictment forms no part of that question.   The objection went to the admissibility of any evidence relative to the character or contents of the commission; because it was not produced, or its non production sufficiently accounted for: and this brings us to the second head of inquiry, viz. whether the facts proved presented a proper case for the admission of secondary evidence.

The facts which had been proved were, that the privateer was built and fitted out in the port of Baltimore for John Chase. The crew was shipped at Baltimore by Franklin Chase, the brother of John Chase.   That she sailed from the port of Baltimore for the West Indies under the name of the Jane, and at St Eustatia she hoisted Buenos Ayrean colours, and changed her name to that of the Congresso; and performed a cruise under the command of the said John Chase, exercising therein acts of hostility against the subjects and government of Brazil. That Chase stood indicted in the same court for a misdemeanour for accepting a commission, and cruising with the said privateer against the government and subjects of Brazil; and that a bench warrant had been repeatedly issued against him, but he could not be found.

This evidence established very clearly, that this vessel was fitted out and cruising in violation of the law of the United States, and that she was under the command of John Chase. It is reasonable, therefore, to presume that the commission on board the privateer was the authority under which Chase acted. He was the person most interested in retaining the possession of the commission; and the law will presume it to be in his custody, when there is no proof to the contrary; and to him, therefore, application should be made for it.   The law points to him as the depository of this document, and search for it in any other place would not amount to that due diligence to procure the primary evidence which would be necessary in order to let in the secondary evidence.

But if all reasonable diligence has been used to find it at the place where the law presumes it to be, no more can be required for the purpose of letting in the secondary evidence.

Has that been done?   The person whom the law charges with

the custody of the paper stands indicted for an offence against the same law; process has been repeatedly issued against him to have him apprehended, without effect. This was all the effort to find him that could reasonably be required. A subpœna to compel his attendance as a witness would have availed nothing, and the law does not require the performance of an act perfectly nugatory. But suppose Chase had been within the reach of a subpœna, and had actually attended the court, he could not have been compelled to produce the commission, and thereby furnish evidence against himself. All the means, therefore, that could have been used to produce the commission itself, were exhausted.

But it has, in the third place, been argued, that admitting enough had been shown to lay the foundation for the admission of secondary evidence, that which was offered was not the best evidence of which the nature of the case admitted.

The rule of evidence does not require the strongest possible evidence of the matter in dispute; but only that no evidence shall be given which, from the nature of the transaction, supposes there is better evidence of the fact attainable by the party. It is said in the books, that the ground of the rule is a suspicion of fraud, and if there is better evidence of the fact, which is withheld, a presumption arises, that the party has some secret or sinister motive in not producing it. Rules of evidence are adopted for practical purposes in the administration of justice; and must be so applied, as to promote the ends for which they are designed. It has been said, that according to this rule recourse should have been had to the records of the Buenos Ayrean government for a copy of the commission. If it should be admitted that a record is there to be found of this instrument, and that on application a copy of it might have been procured, it would be carrying the rule to pretty extravagant lengths to require the application to be made. But there is nothing in this case showing that any such record exists. Nor can this court presume as matter of law, that a record of such commission, as filled up, would be found there. And, indeed, from the nature of the transaction, the contrary is the reasonable presumption. It is not unlikely that the Buenos Ayrean government may have some record of the names of persons to whom commissions had been issued. But

the course of the transaction almost necessarily implies, that the commissions issued here were sent out in blank, as to the names of persons and vessels, and the mere formal parts of the commission would have furnished no evidence whatever. So that there is no reasonable ground to conclude that a record of this commission existed from which a copy might have been made. But if that should be admitted, it does not bring the case within the rule. The evidence must be attainable, or within the power of the party who is called upon to produce it; and, from the nature of this transaction, there is no reason to conclude that such was the case here; but the contrary is fairly to be inferred. It must have been a voluntary act on the part of the foreign government to have permitted a copy to be taken; and it is unreasonable to suppose that such permission would have been given. It would have been voluntarily furnishing evidence against its own agents, employed to violate our laws; and no comity of nations could have required this.

We are accordingly of opinion that the evidence offered was admissible, and direct it to be so certified to the circuit court.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Maryland, and on the points and questions on which the judges of the said circuit court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel; on consideration whereof, it is the opinion of this Court, that the evidence offered was admissible. Whereupon it is ordered and adjudged by this Court, that it be certified to the said circuit court that the evidence offered in this cause was admissible.