# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 8, 2023          Decided July 5, 2024

No. 22-5305

S. STANLEY YOUNG, DR. AND LOUIS ANTHONY COX, JR., DR.,
APPELLANTS

v.

ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02623)

———

*Brett A. Shumate* argued the cause for appellants. With him on the briefs were *Brinton Lucas*, *Stephen J. Kenny*, and *Joseph P. Falvey.*

*Sarah Elizabeth Spencer* and *Lawrence S. Ebner* were on the brief for *amicus curiae* Atlantic Legal Foundation in support of appellant.

*Joseph F. Busa*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Mark B. Stern*, Attorney, *Abirami Vijayan*, Assistant

2

General Counsel, Environmental Protection Agency, and *David P.W. Orlin*, Attorney Advisor.

Before: WALKER and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: The Environmental Protection Agency appoints experts to the Clean Air Scientific Advisory Committee. When S. Stanley Young and Louis Anthony Cox were not appointed to that committee, they sued the EPA.

Two of their claims are before us. One alleges a violation of the Federal Advisory Committee Act. The other alleges a violation of the Administrative Procedure Act. But because Young and Cox lack standing to bring this suit, both claims must be dismissed.

**I**

The Federal Advisory Committee Act "regulates committees that provide advice to the federal government." *Electronic Privacy Information Center v. Drone Advisory Committee*, 995 F.3d 993, 996 (D.C. Cir. 2021); *see generally* 5 U.S.C. app. 2, *et seq.* One of the committees covered by FACA is the Clean Air Scientific Advisory Committee. *See* 42 U.S.C. § 7409(d)(2)(A). It advises the EPA on air-quality standards. *Id.* § 7409(d)(2)(C)(i)-(iv). After a public nominations process, the committee's seven members are generally chosen "at the sole discretion" of the EPA Administrator. 41 C.F.R. § 102-3.130(a); *see also* 42 U.S.C. § 7409(d)(2)(A).

This case began in 2021 when the EPA dismissed the members of the Clean Air Scientific Advisory Committee. After that, the EPA sought "nominations of scientific experts from a diverse range of disciplines to be considered for appointment." 86 Fed. Reg. 17146, 17146 (Apr. 1, 2021). EPA staff then wrote summaries of 100 interested candidates, which was followed by public comment. Finally, EPA staff wrote a decision memo to the Administrator. The staff "evaluated the 100 candidates on demonstrated competence, knowledge and expertise in scientific and technical fields of air pollution and air quality issues." JA 42.

S. Stanley Young and Louis Anthony Cox were nominated and evaluated. But neither was appointed. Instead, the EPA appointed seven other candidates to the committee.

Young and Cox believe their exclusion was illegal. So they sued on eight counts. Four counts have been stayed by the district court (I-IV), and two have been abandoned (VI and VIII). That leaves two counts on appeal (V and VII).

In the first (Count V), the Plaintiffs allege hostility to their views about air quality standards, particularly their view that scientific evidence did not justify stricter standards for "particulate matter (fine particles like dust and soot)." Appellant Br. 9. They say the EPA instead favored candidates who support stricter standards, and that its one-sided selection process violates FACA's command that the committee must be "fairly balanced in terms of the points of view represented and the functions to be performed." 5 U.S.C. app. 2 § 5(b)(2).

In the second count on appeal (Count VII), the Plaintiffs allege that the EPA violated the Administrative Procedure Act

by inadequately explaining how its selection process complied with FACA.

The district court awarded summary judgment to the EPA on those two counts. *See Young v. EPA*, 633 F.Supp.3d 181, 186, 195 (D.D.C. 2022). The district court then issued partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. *See Young v. EPA*, 2022 WL 17976503, at *2 (D.D.C. Nov. 2, 2022).

Young and Cox appealed.

**II**

The Constitution limits our jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. That means plaintiffs must have standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In particular, they must show "(1) an injury-in-fact, (2) causation, and (3) redressability." *Kapur v. FCC*, 991 F.3d 193, 196 (D.C. Cir. 2021).[1]

The Plaintiffs assert their standing to sue with theories about (1) the EPA's alleged consideration of race and sex; (2) the EPA's alleged preference for candidates in favor of stricter regulations; (3) the denial of benefits that flow from service on the committee; and (4) the EPA's alleged failure to adequately explain its compliance with FACA.

---

[1] In the district court proceedings, the Government did not contest standing. *See Young v. EPA*, 633 F.Supp.3d 181, 185 n.2 (D.D.C. 2022). But standing "can be raised at any point in a case," even "*sua sponte* if need be," and "can never be forfeited or waived." *Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014) (cleaned up).

But the Plaintiffs have not demonstrated an Article III injury with any of the theories before us.[2]

**A**

On appeal, the Plaintiffs argue that the EPA unlawfully preferred other "candidates on the basis of race [and] sex," and that its preference "diminished" their "opportunities" for appointment. *See, e.g.*, Appellant Supp. Br. 3 (quoting *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221, 1236 (10th Cir. 2004)).

That theory is viable in other contexts. *See Shea v. Kerry*, 796 F.3d 42, 50 (D.C. Cir. 2015) ("a plaintiff may claim an injury in fact from the purported denial of the ability to compete on an equal footing against other candidates"); *see also Regents of the University of California. v. Bakke*, 438 U.S. 265, 280-81 n.14 (1978). But in their complaint, the Plaintiffs did not raise an Equal Protection claim — or any claim based on race or sex discrimination. Instead, the appealed portions of their complaint mention race and sex only once. *See* JA 240-41 ¶ 124. And even then, they call race and sex merely a factor that "compounded" other "errors." *Id.*

That is not enough to preserve a theory for appeal. *See Huron v. Cobert*, 809 F.3d 1274, 1280 (D.C. Cir. 2016) (cleaned up) ("issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal").

---

[2] We express no opinion on whether the Plaintiffs have met their burden for causation and redressability, or whether their claims are otherwise justiciable.

**B**

The Plaintiffs assert a second unequal-opportunity theory of standing. It concerns their view, known to the EPA, that the best scientific evidence "did not justify recommending strengthening the particulate-matter standards" then in effect. Appellant Br. 10. The Plaintiffs allege that the EPA skipped past them to select candidates who favored "more stringent regulation of air quality standards." Appellant Supp. Br. 4; JA 314-15. Such an unequal opportunity, they say, injured them by reducing their chances of being selected. *See Bakke*, 438 U.S. at 280-81 n.14; *Shea*, 796 F.3d at 50.

At the pleading stage, that "general factual allegation[ ]" may have been enough to show standing. *Lujan*, 504 U.S. at 561. At summary judgment, "however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Id.* (cleaned up).

Here, the record lacks evidence that the EPA's process was slanted against the Plaintiffs. *See Young v. EPA*, 2022 WL 474145, at *2 (D.D.C. Feb. 16, 2022) ("no specific proof that the EPA refused to adjudicate [the Plaintiffs'] nomination[s] fairly"). Instead, the EPA points to direct evidence that suggests the opposite — a fair selection process.[3]

---

[3] *See, e.g.*, 86 Fed. Reg. 17146, 17146 (Apr. 1, 2021) (EPA pointing to its published notice that sought "nominations of scientific experts from a diverse range of disciplines"); JA 42, 103-33, 250 (EPA welcoming nominations from the public, preparing summaries of every nominated candidate, and seeking public comments on all candidates based on a set of uniform criteria); *cf. Young v. EPA*, 633 F.Supp.3d 181, 194-95 (D.D.C. 2022) ("Plaintiffs present no evidence refuting [the EPA's] representations that the Administrator considered the applications of all 115 nominees").

Without the benefit of developed record evidence, the Plaintiffs point to the selected committee members' support for stronger particulate matter standards. But the committee's view on one isolated standard does not demonstrate bias in the selection process. After all, the committee advises on numerous other unrelated air-quality standards. *See, e.g.*, 42 U.S.C. §§ 7408(a), 7409(d)(1)-(2). Because the 100 candidates can hold as many as 100 unique views, it is impossible for a committee of only seven members to capture every combination of views. That's why the absence on the committee of the Plaintiffs' views about particulate matter is by itself insufficient to demonstrate an injury, especially when committee members are selected "at the sole discretion" of the EPA Administrator. 41 C.F.R. § 102-3.130(a).

Moreover, even assuming (without deciding) that a committee's makeup is sometimes by itself sufficient to show an injury, our precedents suggest that a plaintiff excluded from the committee needs at least a "direct interest in the committee's purpose." *National Anti-Hunger Coalition v. Executive Committee of the President's Private Sector Survey of Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983) (emphasis added) ("the 'fairly balanced' requirement was designed to ensure that persons or groups *directly affected* by the work of a particular advisory committee would have some representation" on it). So far as we can tell, the Plaintiffs lack that interest. The record does not show that they are "directly affected by the work" of the committee — at least not in the way the committee affects the owner of a regulated company. *See id*.

Finally, we note that the Plaintiffs, through their able counsel, make a game effort at analogizing to three precedents: *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004); *National Anti-Hunger Coalition v. Executive*

*Committee of President's Private Sector Survey on Cost Control*, 711 F.2d 1071 (D.C. Cir. 1983); and *NAACP Legal Defense & Educational Fund, Inc. v. Barr*, 496 F.Supp.3d 116 (D.D.C. 2020). But none is on point. Unlike here, *Wenker* was decided at the pleading stage — when a plaintiff's burden is lighter than at summary judgment.[4] Unlike here, *Anti-Hunger* thought it could assume standing without deciding it — an approach the Supreme Court later repudiated in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-102, (1998).[5] And unlike here, *NAACP* involved challenges to formal policies that governed the selection process — so that case is not on point, even assuming it was correctly decided (which we need not decide today).

For these reasons, we are not persuaded by the Plaintiffs' second unequal-opportunity theory of standing.

## C

Third, the Plaintiffs claim a loss of the benefits enjoyed by committee members. In particular, they allege a loss of "a

---

[4] In addition, *Wenker* involved an alleged failure-to-comply with a detailed regulatory scheme governing the selection process — an independent error that is absent from the relevant allegations here. 353 F.3d at 1232-34; *see also Center for Policy Analysis on Trade and Health v. Office of U.S. Trade Representative*, 540 F.3d 940, 944-47 (9th Cir. 2008) (concluding standing existed at the motion-to-dismiss stage, but that certain FACA claims are non-justiciable).

[5] This court has recognized a narrow exception to the *Steel Co.* rule under which the court "need not resolve difficult questions of its jurisdiction[] when a prior judgment of the court forecloses the merits issue." *Sherrod v. Breitbart*, 720 F.3d 932, 937 (D.C. Cir. 2013). But there, jurisdiction is assumed only because relief will unquestionably be *denied*. The exception does not apply here, where the Plaintiffs want us to *grant* relief.

valuable and prestigious professional credential," and a loss of "valuable opportunities associated with Committee membership." Appellant Supp. Br. 5-6 (citing JA 79-80).

But the Plaintiffs concede that they have "no individual right to serve on the Committee." *Id.* at 1; *Anti-Hunger*, 711 F.2d at 1074 n.2 ("no cognizable personal right to an advisory committee appointment"). So for good reason, they make little effort to sustain this theory about benefits: Because there is no right to committee membership, there is no right to the benefits that flow from membership.

**D**

Fourth and finally, the Plaintiffs' complaint alleged that the EPA violated the Administrative Procedure Act by inadequately explaining how it complied with their understanding of FACA's mandate for viewpoint diversity. But the Plaintiffs' discussion of standing did not identify this claim as an independent cause of an injury. So at best, the claim depends on the theories discussed above — and because they fail, it fails. *Cf. Waterkeeper Alliance, Inc. v. Regan*, 41 F.4th 654, 660 (D.C. Cir. 2022) (cleaned up) ("Because standing is a claim-specific inquiry, we separately examine plaintiffs' standing as to each of the claims they raise on appeal.").

\*     \*     \*

We vacate the district court's order resolving Counts V and VII on the merits. We remand with instructions to dismiss both for lack of standing.

*So ordered.*